## DECLARATION of SEAN CUMMINGS

I, Sean Cummings, do hereby declare:

## BACKGROUND/EXPERIENCE

1.      I am a Special Agent (SA) with the Drug Enforcement Administration (DEA) and have been since 1999.  Prior to this, I was a Police Officer and Detective at the Eureka Police Department in Eureka, California.  My current assignment is at the Eugene Resident Office in Oregon.  My training and experience include completion of the DEA basic training academy.  This training included the investigation, detection, and identification of controlled substances.  I have consulted and conversed with several other agents and officers from various local, state, and federal agencies on various drug cases, including the distribution of heroin, cocaine, methamphetamine, marijuana, and other controlled substances.  As a result of this and my own experience and training, I am familiar with heroin, cocaine, methamphetamine, marijuana other controlled substances and the methods employed by traffickers of these narcotics.

## PURPOSE OF THIS DECLARATION

2.      This declaration is submitted in support of a complaint *in rem* for forfeiture of the property located at 7470 Maple Creek Road, Westlake, Oregon (hereinafter "**Defendant Real Property**") and $24,990 in U.S. Currency (hereinafter "**Defendant Currency**.")

3.      **Defendant Real Property** is a 27.48-acre parcel that contains an approximately 3,393 square-foot one-story residence as well as several outbuildings, labeled in the aerial photograph below as buildings A, B, C, and D.  The property is located on the east side of Maple Creek Road.



4.	The residence (Building B) is a brown farm-style house, and the front door faces west. The entrance to 7470 Maple Creek is marked with the metal address post with the numbers "7470" on it.



**Declaration of Sean Cummings**                                                         **Exhibit A Page 2**

5.  To the east of the brown residence are two metal shops: one of the shops is larger and has barn-style doors (building D) on the front that face west; the other sits closer to the residence and has two garage-style doors and a man door that face north (building C).



**Declaration of Sean Cummings**  Exhibit A Page 3

6.	A large red horse barn (building A) sits to the northwest of the residence.



7.	According to the Lane County real property tax statement, the property is at Map and Tax Lot: 19-11-16-00-00101, under account number 0854115 and is listed as owned by Chanh Nguyen.  Below is a screen shot of the deed property description obtained from Lane County.

**Declaration of Sean Cummings**	**Exhibit A Page 4**

```
9148064                    EXHIBIT "A"

Beginning at a point in the centerline of County Road No. 605, said
point being 2430.00 feet more or less East of the North 1/4 corner of
Section 16, Township 19 South, Range 11 West, Willamette Meridian;
thence Southerly and Southeasterly following the centerline of said
road to the East boundary line of said Section 16; thence South on the
East line of said Section to a point which is 930 feet South of the
Northeast corner of the Northeast 1/4 of the Northeast 1/4 of said
Section; thence leaving the East line of said Section traveling North
67° 58' 56" West 244.99 feet; thence North 64° 54' 26" West 121.43
feet; thence North 73° 19' 41" West 127.16 feet; thence North 68° 57'
41" West 177.77 feet; thence North 80° 12' 11" West 89.95 feet; thence
North 81° 52' 11" West 132.99 feet; thence North 75° 08' 41" West
205.18 feet; thence North 70° 29' 11" West 160.53 feet; thence South
72° 12' 19" West 176.17 feet; thence South 60° 41' 49" West 162.92 feet
to the centerline of a gravel road; thence following the centerline of
said road Northwesterly and Northerly with approximate points North 62°
07' 11" West 201.55 feet; thence North 79° 25' 26" West 136.60 feet;
thence North 73° 14' 56" West 176.52 feet; thence North 81° 38' 26"
West 164.27 feet; thence North 3° 28' 56" West 56.67 feet; thence North
21° 26' 49" East 156.49 feet; thence North 9° 10' 04" West 299.66 feet
to the North boundary line of said Section 16; thence East following
the North line of said Section 16, 1769.00 feet, more or less, to the
Point of Beginning, in Lane County, Oregon.
```

8.  Based on my training and experience and the evidence I have reviewed, I believe there is probable cause to believe, and I do believe that the **Defendant Real Property** was used or intended to be used to facilitate and the **Defendant Currency** is proceeds of the illegal production, conversion, and distribution of marijuana, in violation of Title 21, United States Code, Section 841, 846, and 856, and are therefore subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(6) & (7).

9.  The facts in this declaration come from my personal observations, my training and experience, and information obtained from other agents, deputies, and officers. This declaration is for the limited purpose of establishing probable cause. Therefore, I have not set forth each fact learned during the investigation, but only those facts and circumstances necessary to establish probable cause.

## REAL PROPERTY ASSESSMENT REPORT

10.     The Lane County Assessor's Summary Report shows that Chanh Nguyen is the owner of the **Defendant Real Property** at 7470 Maple Creek, Westlake, Oregon, since January 2020. The mailing address for Chanh Nguyen is 7470 Maple Creek Road, Westlake, Oregon. The property is listed as 27.48 acres.

## SUMMARY OF THE INVESTIGATION

11.     On August 8, 2022, Lane County Sheriff's Office (LCSO) Detectives received a tip about an illegal marijuana growing operation occurring at the **Defendant Real Property**.

12.     On April 12, 2023, LCSO Detective Sergeant Combs and LCSO Detective Schenfeld drove to the **Defendant Real Property**. They were unable to view the residence due to the terrain and gated driveways, but they could see part of the large red horse barn and smelled a strong odor of marijuana. They believed the odor to be emanating from the **Defendant Real Property** as there are no other properties nearby.

13.     LCSO Detectives used open-source information such a RLID (Regional Land Information Database) and Google to research the listed owner, Chanh Nguyen. They found that Nguyen had been previously arrested in the State of Washington for illegally growing marijuana. They also learned that Nguyen owned a property on Apiary Road in Rainier, Oregon. They spoke with Sergeant Haas with the Columbia County Sheriff's Office. Haas told LCSO Detectives he was aware of the Apiary property, and he believed it also contained an illegal marijuana grow. Sergeant Haas told LCSO Detectives he had seen marijuana root balls on the property as well as other indicators of cultivating marijuana.

14. DEA Task Force Officer and LCSO Detective McQuillan obtained power records for the **Defendant Real Property** and found the property was averaging about 70,000 kilowatt hours per month, indicative of power needed for a marijuana grow. The power usage stayed high through April 2023, which was the date of the last records obtained. The average home uses between 1,500 and 3,000 kilowatt hours per month.

15. Detective McQuillan checked with Oregon Liquor and Cannabis Commission (OLCC), Oregon Medical Marijuana Program (OMMP) and Oregon Department of Agriculture-hemp (ODA) and learned that neither Chanh Nguyen nor the property were approved, permitted, or licensed as a grower or grow locations.

16. On June 17, 2023, a Lane County Circuit Court Judge authorized the search of the **Defendant Real Property**. LCSO and the DEA executed the warrant on June 20, 2023.

17. Upon our arrival on the property, Chanh Nguyen exited the residence and was immediately advised of his *Miranda* warnings by Detective McQuillan as witnessed by Sergeant Marvin Combs. Nguyen told them he understood his rights. Nguyen immediately asked, "Who hate me?" presumably wanting to know who turned him in to the Police.

18. Inside the residence of the **Defendant Real Property**, law enforcement observed several vacuum sealers, packaging material, and marijuana bud and residue. The house was sparsely furnished, unlike a full-time residence.

19. Nguyen provided the following statement post-*Miranda* warnings: Detective McQuillan asked Nguyen how long he had been growing on the property. Nguyen told Detective McQuillan he was not sure. Detective McQuillan asked if he started when he purchased the property in 2020, and he said he did not want to talk about that. Detective McQuillan asked Nguyen who else lived on the property and he said he lived alone. Detective

McQuillan asked if he had any employees on the property, and he said he did not need employees. Sergeant Combs then informed Detective McQuillan that the horse barn, building A, was locked. Chanh said he had a key for the barn and provided it. That key ultimately opened the horse barn.

20.     Nguyen and Detective McQuillan then went for a walk on the property. During the walk, Nguyen explained to Detective McQuillan that this warrant execution was actually a relief to him. He said he was both stressed and relieved because he knew the marijuana operation was illegal. Nguyen admitted to being arrested previously in connection with a marijuana grow in Washington. Nguyen said he was not profiting from marijuana the way he would like to. Detective McQuillan asked how he could afford his electric bill, expensive clothes, and new vehicles. Nguyen said he was barely affording his lifestyle. Detective McQuillan asked Nguyen if he had previously claimed to own a car sales shop. Nguyen laughed and asked how Detective McQuillan knew that. Detective McQuillan told him Detective McQuillan had also learned he claimed to be a retired nail technician. Nguyen said although owning the car shop was fabricated, he had previously been employed as a nail technician. Nguyen said now he grows marijuana but wants to pursue a different career. He said this was what he needed to start over.

21.     As they walked through the buildings behind his residence, buildings C and D, Nguyen said his marijuana was low quality. He showed Detective McQuillan some of the drying marijuana in building C and stated the way it crumbled in his hand was evidence to its poor quality. Building C was full of immature cannabis plants on the west end. On the east end, there was dried marijuana plants hanging from the ceiling.



22.	They then walked to building D. Building D was equipped to grow several thousand plants but appeared to have been recently harvested. There were plant pots that only contained stems. Based on my training and experience this means the plants had recently been cut down for processing. Along the north wall there were still a few plants which had not been harvested. There was also a large pile of fresh root balls outside the building.



23.	They then walked to the large horse arena, building A. Nguyen told Detective McQuillan he worked alone. He described himself as a loner and said his girlfriend did not even

**Declaration of Sean Cummings**	**Exhibit A Page 9**

know what he did for a living. He said his family would disown him if they knew he grew marijuana. Detective McQuillan asked Nguyen if he had employees assist him and he said he did not need them because he said, "It's easy." Detective McQuillan suspected this to be an untrue statement given the sheer volume of plants he was growing on the property. When they entered building A, Nguyen said he would dim the lighting and turn the water supply off. Detective McQuillan allowed him to do so. Inside building A, Detective McQuillan estimated over 1,000 plants were growing. Deputy Strubel said he had counted approximately 1,300 and was recounting. Nguyen said he believed there was closer to approximately 1,050 plants in building A.



24. In total, law enforcement seized and destroyed 2,347 growing marijuana plants and an estimated 100 pounds of dried marijuana from the four buildings at **Defendant Real Property**. Based on the size of the operation in each building and Nguyen's remarks, Detective McQuillan and I estimate that Nguyen was growing about 5,000 marijuana plants on the property when fully operational.

25. During the execution of the warrant, law enforcement located a 2023 Dodge Ram truck behind the residence. There were grow supplies in the back seat of the truck and law

**Declaration of Sean Cummings**                                                **Exhibit A Page 10**

enforcement located a blue nylon bag with $24,990 in U.S. Currency, **Defendant Currency**, in one of the hidden floorboard compartments. The truck was registered to Lamar Keely Davis in Minnesota. Detective McQuillan contacted Mr. Davis by phone on the day we served the warrant. Mr. Davis claimed he had sold the truck to a "Vietnamese" male for $80,000 in $100 dollar bills about a month prior. Nguyen claimed that he borrowed the vehicle from a friend but would not name the friend. Law enforcement later discovered that the vehicle had been stolen from the assembly plant in Michigan and registered in Minnesota with a different VIN. The VIN plate on the door and dashboard were different than the VIN on the engine.



**Declaration of Sean Cummings**                                              **Exhibit A Page 11**

26.     Detective McQuillan obtained a search warrant for Nguyen's cell phone for data starting in May 2020.  When searching the cell phone, Detective McQuillan found photographs dated just a few months after Nguyen purchased **Defendant Property** showing the red horse barn being boarded off and turning into a marijuana grow, indicating and furthering our belief that Nguyen purchased the rural property to illegally produce commercial amounts of marijuana. The photos depict what was an immaculate horse barn with stables when he purchased it turned into plywood walls and ceilings making different grow rooms inside the barn.  Marijuana plants must be grown in highly controlled environments, and enclosed rooms are easier to control than large rooms such as an open barn.



27.     Detective McQuillan also found numerous text messages and photographs detailing Nguyen's illegal marijuana grows and sales.

28.     Text messages showed that Nguyen has a business associate "Sunny," with whom he texted frequently. The text messages include pictures of growing plants and dried marijuana buds. Based on the text messages, Sunny appeared to be a marijuana broker and purchased Nguyen's marijuana for resale. There are hundreds of texts between the two with the majority talking about the sales of marijuana, growing marijuana, and exchanges of money. The text messages show that they deal in U.S. Currency and sometimes send money to be deposited in bank accounts based in Vietnam.

29.     Below are a few examples of these messages:

**November 26, 2022**

    Sunny: Can you check to see if my boy send more money in VN (Vietnam).

    Chanh: ok bro ill tell him to check. Only 100K from last month.

**December 10, 2022**

    Chahn: 62 lights 147p. mousse cake yields very good.

    Sunny: Wow.

**January 5, 2023**

    Sunny: Can I zelle you 5k for the last batch?

    Chanh: Just to be clear 10K cash 5K check 100mill in VN.

**March 19, 2023**

    Chanh: Next harvest will be over 250 lbs. I will give Phi 50 and you take the rest.

    Sunny: No problem.

30. Detective McQuillan also observed text messages regarding the seized Dodge TRX truck. Sunny found the truck and had it shipped to California. Nguyen then told Sunny not to send him 50K owed to him and put it towards the truck instead. Nguyen said he needed the truck because his crops were getting bigger and needed something other than his BMW X5 to transport it.

31. During the search of the **Defendant Real Property**, law enforcement located numerous packages addressed to Nguyen at an address on SE 156th Ave, Portland, Oregon. Surveillance of that location by Columbia County and OSP found a BMW SUV registered to Chanh Nguyen parked at the location. We believe this location is Nguyen's primary residence, again furthering our belief that the **Defendant Real Property** was purchased and operated as a place to grow illegal marijuana.

## CONCLUSION

32. The evidence in this declaration provides probable cause to believe, and I do believe that the **Defendant Real Property** was used or intended to be used to facilitate and the **Defendant Currency** was proceeds of the illegal production, and distribution of marijuana, in violation of Title 21, United States Code, Section 841, 846, and 856, and are therefore subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(6) & (7).

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

Executed this 8th day of November, 2023.

s/ *Sean Cummings*
Sean Cummings
Special Agent
Drug Enforcement Administration